UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RITA SCHINDELER-TRACHTA, D.O., | § | |
|     Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF STATE | § | Case No. 1:17-cv-00257 |
| HEALTH SERVICES, AUSTIN STATE | § | |
| HOSPITAL, STEVEN CATHEY, M.D., | § | |
| AND ALAN ISAACSON, | § | |
|     Defendants. | § | |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Rita Schindeler-Trachta, D.O. ("Plaintiff" or "Dr. Schindeler-Trachta"), files this Original Complaint and would respectfully show the Court as follows:

### **Parties**

1. Plaintiff is an individual residing in Travis County, Texas. The last three numbers of Plaintiff's driver's license number are 477. The last three numbers of Plaintiff's social security number are 413.

2. Defendant Texas Department of State Health Services is a governmental unit that may be served with citation by delivering a true copy of the citation with a copy of the petition attached thereto, to: John Hellerstedt, M.D., Commissioner, Texas Department of State Health Services, 1100 W. 49th Street, Austin TX 78756-3199.

3. Defendant Austin State Hospital is a governmental unit that may be served with citation by delivering a true copy of the citation with a copy of the petition attached thereto, to: Alan Isaacson, Superintendent, Austin State Hospital, 4110 Guadalupe Street, Austin TX 78751.

4. Defendant Steven Cathey, M.D., is an individual residing in Travis County, Texas, who may be served with citation by delivering a true copy of the citation with a copy of the petition attached thereto, to Steven Cathey, M.D., 2705 W. 49 ½ Street, Austin TX 78731.

5. Defendant Alan Isaacson is an individual residing in Travis County, Texas, who may be served with citation by delivering a true copy of the citation with a copy of the petition attached thereto, to Alan Isaacson, 11602 Buttonwood Drive, Austin TX 78759.

6. Pursuant to section 30.004 of the Civil Practice and Remedies Code, the complaint shall be mailed to the attorney general at the attorney general's office in Austin, Texas, by United States Postal Service certified mail, return receipt requested.

## Jurisdiction and Venue

7. This Court has federal question jurisdiction over the lawsuit under 28 U.S.C. § 1331 because the suit arises under 42 U.S.C. § 2000e and 29 U.S.C. § 206(d).

8. Venue is proper in this district under 28 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this district and also because all Defendants reside in this district and state and a substantial part of the events or omissions giving rise to this suit occurred in this district. 28 USC § 1391(b)(1) and (2).

## Conditions Precedent

9. All conditions precedent have been performed or have occurred.

## Exhaustion of Administrative Remedies

10. Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC). Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC.

**Facts**

11. Plaintiff is a Doctor of Osteopathic Medicine. She has worked for the Texas Department of State Health Services at Austin State Hospital ("ASH") since 2008.

12. Plaintiff provides medical care to long-term, medically complex patients at ASH. These patients are physically and mentally ill and do not have the resources to afford private health care. They depend on their caregivers for their lives and the quality of their lives.

13. Throughout her tenure at ASH, Plaintiff has worked to ensure a superior level of patient care. She has received numerous commendations, recognitions, and highly complimentary performance evaluations. She has received positive feedback from management and colleagues.

14. Plaintiff is an Attending Physician and is classified as a "Physician III" by the Texas Department of Health and Human Services.

15. In July 2015, Plaintiff requested, and ASH approved, an increase in her annual salary from $168,574.92 to $195,000.00 to be effective on August 1, 2015. The July 15, 2015, memorandum that recommended this salary increase noted that such an increase would provide Plaintiff with "a more equitable salary to similar positions within the HHS Enterprise" and stated:

> The geriatric population at ASH has the most serious and complex medical conditions seen at the hospital. The care of these patients requires the expertise of a seasoned primary care physician in addition to the psychiatrist care. This level of care is not unique to ASH as this trend is present nationally and across Texas. A psychiatrist is not trained for the primary medical care expertise required to diagnose and treat the many serious, chronic, complex medical conditions that these patients present. Earlier this year, Dr. Schindeler-Trachta was assigned to the unit to strengthen the care plans for these patients. Since the assignment ASH has realized increases in the quality of medical care resulting in improved treatment outcomes. These improvements are preventing conditions from becoming untreatable emergencies. In addition to the improvements in the health outcomes for these patients, the preventative care has improved the quality of the lives of the people receiving the care.
>
> . . .

> Spearheaded by Dr. Schindeler-Trachta and the Utility Management group, there has been a fundamental change in the manner patients are assessed, prepared and referred for outside medical services. This has resulted in the identification of more concise and appropriate services, which has resulted in lower patient costs by reducing the risk associated with uninsured chronically ill patients.

*See* Action Memorandum for the Commissioner (July 15, 2015) at 1, 2 ("Action Memorandum").

16. The Action Memorandum further states that Plaintiff's "scope of practice and the attendant patient load is equal to or above levels required for other Attending Physicians."

17. There are four non-psychiatrist physicians working at the Austin State Supported Living Center (ASSLC) who perform medical care for the long-term patients in that facility. The medical care that these physicians perform is substantially equal to the medical care that Plaintiff performs for the long-term patients at AHS. Like Plaintiff, the four ASSLC physicians are each classified as a "Physician III," but, unlike Plaintiff, they are paid annual salaries of between $224,664 and $200,859. All four of these physicians are male.

18. In 2016, Plaintiff submitted, as she is legally obligated to do, several reports of potential abuse, neglect, and exploitation of her patients to the Texas Department of Family and Protective Services (TDFPS), including incidents of unexplained broken bones, unexplained bruising, fecal-contaminated dentures in a patient's mouth, burns by ASH staff, and other potentially fatal patient issues. TDFPS then notified ASH that Plaintiff had submitted these reports.

19. In response to these reports, ASH retaliated against and attempted to silence Plaintiff. As a result of Plaintiff's reports to TDFPS, no policies or procedures were changed, and no ASH employees were disciplined or terminated. ASH took no steps to address the numerous, serious reports of patient abuse, neglect, and/or exploitation at ASH.

20. Just a few weeks after Plaintiff made these reports, Dr. Steven Cathey, Acting Clinical Director of ASH, and Alan Isaacson, Superintendent of ASH, told Plaintiff that her reports to

TDFPS had caused staff complaints. They claimed that her reports made it difficult to fill open staff positions.

21. They informed Plaintiff that she was to be "organizationally reassigned" to a different position and physically moved out of her ground-level office (which was within steps of her patients and supporting staff) to an office over 1/3 mile away from her patients and on the fifth floor.

22. They further informed Plaintiff that she was to have fewer responsibilities, less involvement with patient care, and less contact with people in the building. She was instructed to limit her contact with staff and patients.

23. They denied her previously-approved salary increase and instructed her to call Dr. Cathey before making any more reports of patient abuse, neglect, and exploitation to TDFPS (as she is legally obligated to do). Dr. Cathey told Plaintiff, "Not everything has to be reported" and challenged the reports that she had filed.

24. Dr. Cathey is capable of exercising supervisory authority over Plaintiff. Mr. Isaacson is also capable of exercising supervisory authority over Plaintiff.

25. After Plaintiff filed TDFPS reports and was "organizationally reassigned," other employees filed TDFPS reports anonymously. They fear retaliation.

26. Plaintiff, like other female employees in the Austin State Hospital (ASH), has been subjected to repeated harassment and a hostile work environment. ASH did nothing to prevent the harassment of Plaintiff and other female employees, even though it was aware of that harassment and the hostile work environment it created. Instead, rather than protecting its female employees by stopping that harassment, ASH retaliated against Plaintiff for reporting the harassment.

27. On July 5, 2016, Dr. Michael Schwartz verbally attacked and harassed Plaintiff in and outside her office. Despite her attempts to diffuse the situation, Dr. Schwartz continued to attack Plaintiff. Plaintiff became fearful of his behavior and arose from behind her desk to open her office door and leave the room. Dr. Schwartz followed Plaintiff out the door. Plaintiff then re-entered her office and quickly closed and locked the door. Dr. Schwartz continued to yell at Plaintiff from outside the door, as reported by others. Plaintiff immediately called Dr. Cathey (her supervisor) and reported the incident.

28. After the July 5 incident, Plaintiff attended a meeting on July 6 that included Dr. Cathey, Mr. Isaacson, Ms. Cathy Nottebart, Dr. Schwartz, and Plaintiff. During the meeting, Dr. Schwartz gave an emotional and derogatory evaluation of Plaintiff's physical appearance. Mr. Isaacson and Dr. Cathey made no mention of Dr. Schwartz's harassment of Plaintiff and merely requested that Dr. Schwartz knock on the door before he entered an office. Mr. Isaacson then told Dr. Schwartz and Plaintiff to behave professionally, making no distinction between her behavior and Dr. Schwartz's.

29. On July 15, 2016, Dr. Schwartz requested to enter Plaintiff's office with another physician colleague. Dr. Schwartz began speaking to Plaintiff in a demanding and threatening tone. Throughout the conversation, Plaintiff felt threatened and under attack. His voice was loud and accusatory.

30. After the July 15 incident, Plaintiff immediately reported the incident to Mr. Isaacson, because Dr. Cathey was out of the office. On August 3, Plaintiff had a meeting with Mr. Isaacson and Dr. Cathey to discuss the July 15 incident. It was at this meeting, which occurred just weeks after Plaintiff reported Dr. Schwartz' harassment of her and just weeks after she filed her reports of patient abuse, neglect, and exploitation with TDFPS, that Mr. Isaacson and Dr.

Cathey informed Plaintiff that they were "organizationally reassigning" her, moving her office, reducing her responsibilities, and restricting her access to patients and staff. Neither Mr. Isaacson nor Dr. Cathey discussed Dr. Schwartz's ongoing harassment of Plaintiff.

31. Dr. Schwartz has demonstrated a pattern of verbal abuse against Plaintiff and other women in the workplace and has caused Plaintiff and other female staff to be fearful of him and to keep their office doors closed and locked. Several females have complained to ASH about Dr. Schwartz.

32. Rather than address Dr. Schwartz's harassment, Defendants chose to retaliate against Plaintiff by refusing to give her the previously-approved raise and demoting her.

33. ASH took no steps to address the complaints by females against Dr. Schwartz. No policies or procedures were changed, and Dr. Schwartz was not disciplined or terminated.

### **Discrimination, Sexual Harassment, and Retaliation under Title VII**

34. Plaintiff incorporates the foregoing paragraphs by reference.

35. By demoting her to a lower-status position with fewer responsibilities, and by refusing to compensate her fairly or implement her previously-approved salary increase, Defendants discriminated against Plaintiff because of her sex and retaliated against her for reporting sexual harassment.

36. In addition, Defendants did not exercise reasonable care to prevent and promptly correct the harassment by Dr. Schwartz, even though Plaintiff promptly reported the harassment. Accordingly, Defendants are vicariously liable for the hostile work environment created by Dr. Schwartz.

37. As a proximate result of Defendants' illegal conduct, Plaintiff has suffered actual damages, including but not limited to economic damages, including lost wages, benefits, and seniority rights, and compensatory damages, including future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. In addition, Plaintiff seeks reinstatement, front pay and benefits, reasonable attorney's fees, expert fees, court costs, and pre- and post-judgment interest as provided by law.

**Violations of the Equal Pay Act**

38. Plaintiff incorporates the foregoing paragraphs by reference. Plaintiff is and has been paid less than male non-psychiatrist physicians who perform substantially equal work. The jobs held by Plaintiff and the male physicians have the substantially equal responsibilities of performing non-psychiatric medical care for long-term patients and are each classified as a "Physician III." The jobs held by Plaintiff and the male physicians require the substantially equal skills necessary for acting as the primary care physicians for patients requiring complex, long-term care. The jobs held by Plaintiff and the male physicians also require the substantially equal effort necessary to perform both the medical services and the management and administrative tasks required of Attending Physicians with similar patient loads.

39. Plaintiff's working conditions at ASH are similar to the working conditions under which the male physicians work at ASSLC, which, like ASH, is a facility in Austin within the Texas state healthcare system that provides medical care for medically fragile patients with mental and physical health issues. Nonetheless, even though Plaintiff performs substantially equal work to these male physicians, Plaintiff's annual salary is $168,574.92, while the annual salaries of the male physicians range from $224,664 to $200,859. As a result of this wage disparity, Defendants have violated and continue to violate the Equal Pay Act.

40. As a proximate result of Defendants' illegal conduct, Plaintiff has suffered actual damages, including lost wages and benefits measured as the difference between what Plaintiff received and what the male physicians who performed substantially equal work received. Plaintiff also seeks

liquidated damages under 29 U.S.C. § 216 in an amount equal to the amount that Plaintiff was underpaid. In addition, Plaintiff seeks attorney's fees, expert fees, court costs, and pre- and post-judgment interest as provided by law.

## Jury Trial

41. Plaintiff demands a jury trial and has tendered the appropriate fee.

## Request for Relief

Plaintiff respectfully requests that Defendants be cited to appear and answer and that, on final trial, Plaintiff have judgment against Defendants as follows:

1. Direct or general damages in an amount within the jurisdictional limits of the court;
2. Actual damages;
3. Past and future economic damages, including lost pay, benefits, and seniority rights;
4. Liquidated damages;
5. Past and future mental anguish damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses;
6. Expert fees;
7. Reinstatement, including reinstatement in Plaintiff's former position and reinstatement of lost fringe benefits and seniority rights, or front pay and benefits;
8. An injunction enjoining future unlawful practices;
9. Exemplary damages;
10. Reasonable attorneys' fees;
11. Prejudgment interest as provided by law;
12. Postjudgment interest as provided by law;
13. Court costs; and

14. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

FROST DOMEL PLLC
Emily Frost
State Bar No. 24036601
711 W. 7th Street
Austin, Texas 78701
(512) 640-5501
(512) 519-4569 FAX
emily@frostdomel.com

By: /s/ Emily Frost
    Emily Frost

ATTORNEYS FOR PLAINTIFF